UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

ADLIFE MARKETING &
COMMUNICATIONS COMPANY,
INC.,

      Plaintiff,

  -against-           5:19-CV-0796 (LEK/CFH)

BUCKINGHAM BROTHERS, LLC,

      Defendant.
_____

<u>**MEMORANDUM-DECISION AND ORDER**</u>

**I.  INTRODUCTION**

  Adlife Marketing & Communications Company, Inc. filed the present copyright

infringement action against Buckingham Brothers, LLC on July 4, 2019. Dkt. No. 1

("Complaint"). Defendant failed to respond to this action by the July 30, 2019 deadline. Dkt. No.

15. Currently before the Court is Plaintiff's unopposed motion for default judgment. <u>See</u> Dkt.

Nos. 9 ("Declaration in Support"); 12 ("Plaintiff's Motion"); 13 ("Plaintiff's Memorandum"); 14

("Liebowitz Declaration"); 15 ("Proposed Order"); 16 ("Affidavit of Service"). For the reasons

stated below, Plaintiff's Motion is denied, and the Court imposes sanctions against Plaintiff's

counsel.

**II.  BACKGROUND**

  "The following facts are taken from the [] Complaint and are assumed to be true for

purposes of the instant motion." <u>Chiquita Fresh N. Am., LLC v. Long Is. Banana Corp.</u>, No. 14-

CV-982, 2018 WL 1786991, at *1 (E.D.N.Y. Feb. 28, 2018), <u>report and recommendation</u>

<u>adopted by</u> 293 F. Supp. 3d 305 (E.D.N.Y. 2018). Plaintiff is an advertising agency specializing

in design, digital marketing, print advertising, and photography. Compl. ¶ 1. Plaintiff is represented by the Liebowitz Law Firm, PLLC ("LLF"), with Richard Liebowitz as lead counsel. Defendant is a domestic limited liability company. Id. ¶ 6.

Plaintiff is copyright holder of a photograph of pork (the "Photograph"). The Photograph was properly registered with the United States Copyright Office. Id. ¶ 8. Defendant printed the Photograph in its weekly advertisements for its food products. Id. ¶ 1. Defendant did so without a license, permission, or consent from Plaintiff. Id. ¶¶ 9–10. Plaintiff believes Defendant's acts were "willful, intentional, and purposeful, in disregard of and indifference to Plaintiff's rights." Id. ¶ 14.

In the Complaint, Plaintiff sought an award of either (a) actual damages and Defendant's profits, gains, or advantages of any kind attributable to Defendant's infringement of the Photograph, or (b) statutory damages of up to $150,000 per copyrighted work infringed pursuant to 17 U.S.C. § 504. Id. ¶ 4. Plaintiff also sought its costs, expenses, attorney's fees pursuant to 17 U.S.C. § 505, and pre-judgment interest. Id. Defendant did not respond to the Complaint. Docket.

On September 13, 2019, in accordance with Federal Rule of Civil Procedure 55(a), Plaintiff requested an entry of default against Defendant. Dkt. No. 9. The Clerk of the Court approved Plaintiff's request for entry of default on September 17, 2019. Dkt. No. 10. Plaintiff's Motion and Plaintiff's Memorandum were filed on October 18, 2019. Dkt. Nos. 12–13. For violation of 17 U.S.C. § 501, Plaintiff seeks $30,000 in statutory damages for willful copyright infringement. Pl.'s Mem. ¶ 1. Additionally, Plaintiff seeks its costs, expenses, and attorney's fees pursuant to 17 U.S.C. § 505. Defendant failed to respond to Plaintiff's Motion. Docket.

### III.    LEGAL STANDARD

"Rule 55(b) of the Federal Rules of Civil Procedure provides for the entry of default judgment in the event a defendant has failed to plead or otherwise defend in an action." Pert 35, Inc. v. Amari Aviation Ltd., No. 09-CV-448, 2010 WL 1257949, at *3 (N.D.N.Y. Mar. 5, 2010), report and recommendation adopted by No. 09-CV-448, 2010 WL 1257950 (N.D.N.Y. Mar. 25, 2010); see also Fed. R. Civ. P. 55(b). "That rule, in tandem with the Northern District of New York Local Rule 55.2, sets forth certain procedural prerequisites that must be met before a default judgment may be entered[.]" Buttnugget Publ. v Radio Lake Placid, Inc., 807 F. Supp. 2d 100, 105 (N.D.N.Y. 2011) (quoting Pert 35, Inc., 2010 WL 1257949, at *3). A proper motion for default judgment requires a plaintiff to (1) show that the defendant was properly served with a summons and complaint; (2) obtain the clerk's entry of default; and (3) provide an affidavit. Id.; Fed. R. Civ. P. 55(b)(2); N.Y.N.D. L.R. 55.1 and 55.2.

"The affidavit must set forth that: (1) the party against whom judgment is sought is not an infant, incompetent, or in military service; (2) the party against whom judgment is sought has defaulted in appearance in the action; (3) service was properly effected under Federal Rule of Civil Procedure 4; (4) the amount sought is justly due and owing, and no part of that amount has been paid; and (5) the disbursements sought to be taxed have been made in the action or will necessarily be made or incurred." Golub Corp. v KLT Indus., Inc., No. 18-CV-1125, 2020 WL 3254133, at *2 (N.D.N.Y. June 16, 2020) (Kahn, J.) (citing L.R. 55.2(a)).

"When a default judgment is entered, the defendant's failure to respond constitutes an admission of the well-pleaded factual allegations in the complaint, except as to claims relating to damages." Coated Fabrics Co. v Mirle Corp., No. 06-CV-5415, 2008 WL 163598, at *4 (E.D.N.Y. Jan. 16, 2008) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp., 973

F.2d 155, 158 (2d Cir. 1992)). Even so, "prior to entering default judgment, a district court is required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." Terry v. Masterpiece Adv. Design, No. 17-CV-8240, 2018 WL 3104091, at *1 (S.D.N.Y. June 21, 2018) (quoting City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011)) (internal quotation marks omitted) (alterations in original); see also W.A.W. Van Limburg Stirum et al. v. Whalen et al., No. 90–CV–1279, 1993 WL 241464, at *4 (N.D.N.Y. June 29, 1993) (holding that, "[b]efore judgment can be entered, the court must determine whether plaintiff's factual allegations are sufficient to state a claim for relief") (internal quotation marks omitted).

"The Second Circuit has 'generally disfavored' granting default judgment because it is an extreme remedy, and while it may be efficient, the court must weigh its interest in expediency against the need to afford all litigants the opportunity to be heard." Stridiron v. Community Broadcasters, LLC, No. 19-CV-108, 2019 WL 2569863, at *2 (N.D.N.Y. June 21, 2019) (quoting Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993)). Default is particularly disfavored "when the case presents issues of fact," Meehan v. Snow, 652 F. 2d 274, 277 (2d Cir. 1981), or "when substantial sums of money are demanded." Diakuhara, 10 F.3d at 96. "[W]hen the case presents issues of fact . . . doubts are to be resolved in favor of a trial on the merits." Meehan, 652 F. 2d at 277.

"With respect to motions for entries of default, district courts consider three factors: '(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented.'" Carey v. Intl. Consol. Companies, Inc., No. 09-CV-2694, 2009 WL 4891812, at *2 (E.D.N.Y. Dec. 11, 2009) (quoting Diakuhara, 10 F.3d at 96)).

## IV.    DISCUSSION

Ordinarily, motions for default judgment are relatively straightforward, but due to the behavior of Plaintiff, and more particularly, Plaintiff's counsel, this motion is more complex. While Liebowitz has satisfied the procedural requirements,[1] he has failed to state a claim for statutory damages and attorney's fees. Moreover, Liebowitz has employed misleading citations and frivolous[2] assertions in an attempt to recover an unjustifiably high amount of statutory damages and attorney's fees. Accordingly, Liebowitz and his firm are subject to sanctions under the court's inherent authority.

### A.  Legal Insufficiency of Claims for Statutory Damages and Attorney's Fees

To adequately plead a copyright infringement claim, the plaintiff must allege: (1) ownership of a valid copyright that is registered in accordance with the statute; (2) unauthorized copying of the copyrighted work; and (3) by what acts and during what time the defendant infringed the copyright. Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC, No. 16-CV-5393, 2017 WL 3432303, at *2 (S.D.N.Y. Aug. 9, 2017) (citing Kelly v. L.L. Cool J., 145 F.R.D. 32, 36 (S.D.N.Y. 1992)), aff'd sub nom. Kelly v. L.L. Cool J, 23 F.3d 398 (2d Cir. 1994); Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003).

More particular requirements apply to claims for statutory damages and attorney's fees. Under § 412 of the Copyright Act, "a prevailing plaintiff is not entitled to statutory damages, or

---

[1]  See Decl. in Support; Aff. of Service.

[2]  "*Black's* defines a 'frivolous' pleading as one 'clearly insufficient on its face,' and a 'frivolous' claim as one for which a proponent 'can present no rational argument based upon the evidence or law in support of that claim.'" United States v Ali, No. 06-CV-200, 2008 WL 4773422, at *11 (E.D.N.Y. Oct. 27, 2008) (quoting *Black's Law Dictionary* 1565 (6th ed.1990)). "*Webster's* defines 'frivolous' as 'of little weight or importance,' and 'having no basis in law or in fact.'" Ali, 2008 WL 4773422, at *11 (quoting *Webster's Third New International Dictionary* 2548 (3d ed.1993)).

to receive attorney's fees under the Act, if '(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after the first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.'" McCarthy v. Stollman, No. 06-CV-2613, 2010 WL 11586609, at *9 (S.D.N.Y. Feb. 23, 2010) (quoting 17 U.S.C. §412); see also Singh v. Famous Overseas, Inc., 680 F. Supp. 533, 535 (E.D.N.Y. 1988) (same).

Section 412 serves two fundamental purposes. "First, by denying an award of statutory damages and attorney's fees where infringement takes place before registration, Congress sought to provide copyright owners with an incentive to register their copyrights promptly." Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 700 (9th Cir. 2008); see also H.R.Rep. No. 94–1476, at 158 (1976), as reprinted in 1976 U.S.C.C.A.N. 5659, 5774 ("Copyright registration . . . is useful and important to users and the public at large . . . and should therefore be induced in some practical way."). "Second, § 412 encourages potential infringers to check the Copyright Office's database." Derek Andrew, 528 F.3d at 700; see also Johnson v. Jones, 149 F.3d 494, 505 (6th Cir.1998); Morgan v. Hawthorne Homes, Inc., No. 04-CV-1809, 2011 WL 2181385, at *3 (W.D. Pa. June 2, 2011).

Considering the language of the section and its legislative history, the Court concludes that, at a minimum, to state a claim for statutory damages and attorney's fees under § 412, a plaintiff must allege the date infringement commenced and the date of registration, because these dates are necessary and sufficient to establish compliance with § 412(1) and necessary to establish compliance with § 412(2). See Becton, Dickinson and Co. v. Cytek Biosciences Inc., No. 18-CV-933, 2020 WL 1877707, at *7 (N.D. Cal. Apr. 15, 2020) ("[T]o state a claim for

6

statutory damages and attorney's fees, a plaintiff must allege the date infringement commenced, the date of registration, and the date of first publication.") (internal quotation marks omitted); Lickerish, Inc. v. Alpha Media Grp., No. 13-CV-377, 2014 WL 12589641, at *5 (C.D. Cal. Jan. 2, 2014) ("Section 412 requires the identification of three events as a prerequisite to statutory damages and attorney's fees: the date infringement commenced, the date of registration, and the date of first publication.") (citing Zito v. Steeplechase Films, Inc., 267 F. Supp. 2d 1022, 1026 (N.D. Cal 2003)).

Moreover, courts in this Circuit often dismiss claims for statutory damages or attorney's fees at the Rule 12(b)(6) stage if a work is neither registered before the infringement nor published before the infringement and within three months of registration, bases for dismissal under § 412 that both depend upon the alleged registration date. See, e.g., Solid Oak Sketches, LLC v. 2K Games, Inc., No. 16-CV-724, 2016 WL 4126543, at *4 (S.D.N.Y. Aug. 2, 2016) (finding that because plaintiff alleged that the infringement began before the registration, "Plaintiff is not entitled to recover either statutory damages or attorneys' fees [and] Defendants' motion to dismiss Plaintiff's claims for statutory damages and attorneys' fees is therefore granted"); Argentto Sys., Inc. v. Subin Assocs., LLP, No. 10-CV-8174, 2011 WL 2534896, at *3 (S.D.N.Y. June 24, 2011) ("Because the alleged infringement began before the effective date of the copyright registration of the software at issue, the motion to dismiss Plaintiffs' claims for statutory damages and attorney fees is granted."); C.A. Inc. v. Rocket Software, Inc., 579 F. Supp. 2d 355, 364 (E.D.N.Y. 2008) (noting in precluding statutory damages and attorneys fees at the Rule 12(b)(6) stage that "[w]here, as here, the infringement is alleged to have commenced prior to registration . . . statutory damages and attorneys' fees are unavailable."); Ez-Tixz v. Hit-Tix, Inc., 919 F. Supp. 728, 736 (S.D.N.Y. 1996) (dismissing plaintiff's claims for statutory

damages and attorney's fees because "[t]he plaintiff's own complaint alleges that the infringement began [before the alleged registration date]"). Since courts in this Circuit dismiss claims for statutory damages and attorney's fees when a plaintiff includes a copyright registration date that succeeds the date of infringement, it would seem inconsistent and indeed perverse to find that a plaintiff states a claim when she omits the date of registration entirely. For under such a pair of rules, a plaintiff could survive an otherwise viable motion to dismiss or prevail on an otherwise unmeritorious motion for default judgment by simply concealing a straightforward allegation essential to determining the legal sufficiency of her claims.

For these reasons, the Court concludes that a claim for statutory damages or attorney's fees is legally insufficient if the plaintiff does not include the date of registration, and that a motion for default judgment may be denied on this basis.

Although Plaintiff would properly state a claim for copyright infringement if it sought some other remedy,[3,4] Plaintiff fails to adequately state a claim for statutory damages and attorney's fees. Plaintiff alleges that it registered the Photograph with the U.S. Copyright Office but fails to include the effective date of the copyright registration as required by § 412(1). See McGucken v. Chive Media Group, LLC, No. 18-CV-1612, 2018 WL 3410095, at *5 (C.D. Cal. July 11, 2018) (denying statutory damages and attorney's fees because "Plaintiff does not

---

[3]  Plaintiff does not include the date of infringement in the Complaint, but an attached document reasonably indicates two separate dates when Defendant infringed the Photograph. Ex. B; see Parisi v. United States, No. 08-CV-606, 2009 WL 1851042, at *3 (N.D.N.Y. June 26, 2009) (noting that "a court 'may consider all papers and exhibits appended to the complaint'") (quoting Hirsch v. Arthur Andersen and Co., 72 F.3d 1085, 1092 (2d Cir. 1995)).

[4]  Section 412 does not affect a plaintiff's request for actual damages or injunctive relief. See Singh, 680 F. Supp. at 535 ("Under the general scheme of [the Copyright Act], a copyright owner whose work has been infringed before registration would be entitled to the remedies ordinarily available in infringement cases: an injunction on terms the court considers fair, and his actual damages plus any applicable profits not used as a measure of damages.").

include any information about the date of registration of his copyrights or the date of alleged infringement"); <u>Wongab Corp. v Nordstrom, Inc.</u>, No. 17-CV-2974, 2017 WL 10439833, at *7 (C.D. Cal. Sept. 21, 2017) (denying same where plaintiff only stated that the work was registered with the U.S. Copyright Office).

Therefore, Plaintiff's motion for default judgment is denied due to the legal insufficiency of Plaintiff's claims for statutory damages and attorney's fees, and Plaintiff's claims are dismissed without prejudice.

### B.  Sanctions

"A court may impose sanctions under its inherent authority if 'it finds, by clear and convincing evidence, that the party or attorney knowingly submitted a materially false or misleading pleading, or knowingly failed to correct false statements, as part of a deliberate and unconscionable scheme to interfere with the Court's ability to adjudicate the case fairly.'" <u>Usherson v. Bandshell Artist Mgt.</u>, No. 19-CV-6368, 2020 WL 3483661, at *9 (S.D.N.Y. June 26, 2020) (quoting <u>Braun ex rel. Advanced Battery Techs., Inc. v. Zhiguo Fu</u>, No. 11-CV-4383, 2015 WL 4389893, at *17 (S.D.N.Y. July 10, 2015)). To impose sanctions under the Court's inherent powers, "there must be clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." <u>Cole v. Stephen Einstein & Assoc., P.C.</u>, 365 F. Supp. 3d 319, 337 (W.D.N.Y. 2019) (quoting <u>United States v. Prevezon Holdings, Ltd.</u>, 305 F. Supp. 3d 468, 478–79 (S.D.N.Y. 2018)) (internal quotations omitted).

"Imposition of sanctions under a court's inherent powers requires a specific finding that an attorney acted in bad faith." <u>Wolters Kluwer Fin. Servs., Inc. v. Scivantage</u>, 564 F.3d 110, 114 (2d Cir. 2009). Any finding of bad faith "must be supported by a high degree of specificity

in the [court's] factual findings." <u>Rock v. Enfants Riches Deprimes, LLC</u>, No. 17-CV-2618,

2020 WL 468904, at *2 (S.D.N.Y., Jan. 29, 2020) (quoting <u>Enmon v. Prospect Capital Corp.</u>,

675 F.2d 138 (2012)) (alteration in original); <u>see also</u> <u>Baker v. Urban Outfitters, Inc.</u>, 431 F.

Supp. 2d 351, 362 (S.D.N.Y. 2006), <u>aff'd</u>, 249 F. App'x 845 (2d Cir. 2007) ("In considering

whether there has been bad faith, the court may consider the manner in which the action was

brought and the manner in which it was litigated."). Bad faith may be inferred when "an attorney

engages in conduct that is so objectively unreasonable that he necessarily must have been acting

in bad faith." <u>Id.</u> (quoting <u>Forman v. Mt. Sinai Med. Ctr.</u>, 128 F.R.D. 591, 600 (S.D.N.Y. 1989)).

In determining whether there has been a finding of bad faith, a court may take judicial

notice of other courts' rulings and the counsel's past misconduct. <u>Gollomp v. Spitzer</u>, 568 F.3d

355, 374 (2d Cir. 2009) (sanctioning plaintiff's counsel after counsel "ha[d] been repeatedly

warned about the perils of frivolous and vexatious litigation"); <u>see also</u> <u>Rice v. NBCUniversal</u>

<u>Media, LLC</u>, No. 19-CV-447, 2019 WL 3000808, at *3–4 (S.D.N.Y. July 10, 2019) (imposing

sanctions against Liebowitz pursuant to the court's inherent authority for failure to comply with

court orders and because Liebowitz's "failure to comply is not isolated but rather part of a

pattern of non-compliance") (internal quotation marks and alterations omitted), <u>report and</u>

<u>recommendation adopted by</u> No. 19-CV-447, 2019 WL 3752491 (S.D.N.Y. Aug. 8, 2019).

"[D]istrict courts have the inherent power to sanction a party for bad faith conduct

violating the court's orders even if procedural rules exist which sanction the same conduct."

<u>Usherson</u>, 2020 WL 3483661, at *9 (internal quotation marks omitted) (quoting <u>S. New England</u>

<u>Tel. Co. v. Glob. NAPs Inc.</u>, 624 F.3d 123, 144 (2d Cir. 2010)); <u>see also</u> <u>Chambers v. NASCO,</u>

<u>Inc.</u>, 501 U.S. 32, 50 (1991) ("[N]either is a federal court forbidden to sanction bad-faith conduct

by means of the inherent power simply because that conduct could also be sanctioned under the

statute or the Rules."); Rice, 2019 WL 3000808, at *3–4 (imposing sanctions on Liebowitz pursuant to the Court's inherent authority).

The Court imposes sanctions on Liebowitz and LLF for Liebowitz's frivolous assertions with respect to (1) attorney hours; (2) hourly attorney rate; and (3) the value of Adlife's copyright.

### 1. Frivolous Assertions with Respect to Attorney Hours

The Court finds that the time LLF recorded for attorney hours is fraudulent and materially false. Plaintiff's Motion and Liebowitz's Declaration are almost entirely copy-pasted from counsel's previous work. See, e.g., Hirsch v. The Dishh, LLC, No. 18-CV-9079, Dkt. No. 1, ¶¶ 1–2, 16–20, 26–28 (S.D.N.Y. Nov. 19, 2018); Zlozower v. Rukkus, Inc., No. 17-CV-9510, Dkt. No. 11, at 7 (S.D.N.Y. Mar. 1, 2018); Myeress v. Brissi Group, LLC, No. 17-CV-9691, Dkt. No. 1, ¶ 1–5 (S.D.N.Y. Dec. 9, 2017). In the present case, Liebowitz alleged that it took seven hours to research, draft, and file documentation that had already been written, Liebowitz Decl. ¶ 20, in an apparent attempt to gouge Defendant for time and expenses his firm never spent.

Another judge in this District recently identified a similar pattern in Liebowitz's filings. Judge Hurd noted that Liebowitz "recycles much of his filings—even his fee requests—from earlier cases," and suggested that "[t]his evident redundancy casts significant doubt as to how much time he actually spent preparing his motions." Sadowski v. Roser Communications Network, Inc., No. 19-CV-592, 2020 WL 360815, at *6 (N.D.N.Y. Jan. 22, 2020); see also Mantel v. Smash.com Inc., No. 19-CV-6113, 2019 WL 5257571, at *4 (W.D.N.Y. Oct. 17, 2019) (noting that Liebowitz claimed to have spent hours drafting a complaint and motion that were largely similar to documents that he had previously filed, and collecting cases in which other courts had found the same); Whitehead v. Mix Unit, LLC, No. 17-CV-9476, 2019 WL

384446, at *6 (S.D.N.Y. Jan. 31, 2019) (noting that Liebowitz's documents "closely resemble documents Leibowitz has submitted in many other copyright infringement cases").

In this case, even some of Liebowitz's time logs are identical to his past filings. See, e.g., Hirsch, Dkt. No. 13 ¶ 20; Wolman v. Hudson Valley News Network, LLC, No. 18-CV-11589, Dkt. No. 13 ¶ 19 (S.D.N.Y. Dec. 11, 2018); see also Sadowski, 2020 WL 360815, at *6 (noting that Liebowitz's fee requests were identical to past filings). Additionally, Liebowitz asserts that it took one hour to "Process service of summons and complaint" and "Request Clerks Entry of Default." Liebowitz Decl. ¶ 20. He has repeated this assertion in this case after at least two other judges found this precise calculation to be excessive. See Sadowski, 2020 WL 360815, at *6; Mantel, 2019 WL 5257571, at *4.

Given the large workload that Liebowitz has placed on his firm, it is not surprising that the majority of the firm's filings are identical. In May 2020, Liebowitz admitted that he "ha[s] two lawyers handling over 400 cases at one time." Mondragon v. Nosrak LLC, No. 19-CV-1437, 2020 WL 2395641, at *9 (D. Colo. May 11, 2020). On the week of May 4–8, 2020, "Liebowitz filed nineteen new copyright cases in federal courts around the United States. At the rate of 19 cases a week, he is on track to file more than 900 new cases this year alone." Id. at *11. LLF has filed over 1,200 cases since 2017 in the Southern District of New York, more than any other lawyer. Usherson, 2020 WL 3483661, at *1. This mass-filing approach has resulted in many procedural and substantive errors, and at times, frivolous claims. Cf. Rankin v. City of Niagara Falls, 293 F.R.D. 375, 382 (W.D.N.Y. 2013) ("If a busy attorney makes misleading representations to a court out of expedience and selfish disdain for the sound administration of justice, sanctions may be necessary to deter similar misconduct by that attorney and by similarly-

situated attorneys."), <u>affd sub nom.</u> <u>Rankin v. City of Niagara Falls, Dept. of Pub. Works</u>, 569
Fed. Appx. 25 (2d Cir. 2014).

It is thus clear by a review of his filings that Liebowitz's request for attorney's fees is
both frivolous and indicative of bad faith.

## 2. *Frivolous Assertions with Respect to Hourly Attorney Rate*

The Court also finds that Liebowitz has used misleading citations in an attempt to recover
an unjustifiable high hourly rate of attorney's fees. "According to the 'forum rule,' courts should
employ 'the hourly rates . . . in the district in which the reviewing court sits in calculating the
presumptively reasonable fee.'" <u>Golub</u>, 2020 WL 3254133, at *4 (quoting <u>Bergerson v. N.Y.
State Office of Mental Health</u>, 652 F.3d 277, 290 (2d Cir. 2011)). "Courts in this district have
recently determined hourly rates between $250 and $350 for partners." <u>Sadowski</u>, 2020 WL
360815, at *4 (citing <u>Deferio v. City of Syracuse</u>, No. 16-CV-361, 2018 WL 3069200, at *3
(N.D.N.Y. June 21, 2018); <u>see also</u> <u>Broadcast Music, Inc. v DeJohn's on Lark, Inc.</u>, No. 19-CV-
637, 2020 WL 1986903, at *7 (N.D.N.Y. Apr. 27, 2020) ("hourly rates have ranged from $250 to
$325 for partners of a firm"); <u>Premium Sports, Inc. v. Nichols</u>, No. 17-CV-741, 2018 WL
3574870, at *9 (N.D.N.Y. July 25, 2018) (finding $300 to be a reasonable rate for an
experienced partner with federal experience); <u>Seidenfuss v. Diversified Adj. Services, Inc.</u>, No.
15-CV-1210, 2016 WL 1047383, at *2 (N.D.N.Y. Mar. 15, 2016) ("Courts in this District
consistently deem $300 to be an reasonable hourly rate for an experienced partner."); <u>Jimico
Enterps., Inc. v. Lehigh Gas Corp.</u>, No. 07-CV-0578, 2014 WL 1239030, at *6 (N.D.N.Y. Mar.
25, 2014) (awarding $300 for partner-level work).

In spite of the above case law, in Liebowitz's Declaration, he states that his hourly rate of
$425 is "well below what other courts in this district have found as reasonable for partners."

Liebowitz Decl. ¶ 20. He then cites to several cases from the Southern District of New York in support of this rate, asserting that partners usually recover $400 to $800 an hour. Id.  Liebowitz is clearly aware that this rate is incorrect in this District, as he has recently been corrected for asserting a rate of $425 based on S.D.N.Y. precedent. See Stridiron, 2019 WL 2569863, at *4 (correcting Liebowitz for failing to cite to any N.D.N.Y. rates and concluding that he is entitled to a reasonable hourly rate of $120-150 based on the District's reasonable rate for an attorney with his experience). Liebowitz has thus exhibited bad faith in making this argument only a few months after being advised that it lacks any legal basis.

Moreover, multiple judges have adjusted Liebowitz's rate below even the prevailing rate for partners in N.D.N.Y. based on his preceding reputation and his limited experience, putting him on notice that his claim to be entitled to an abnormally high partner rate in this case is legally baseless for an additional reason. See Mantel, 2019 WL 5257571, at *4–5 (finding that given Liebowitz's history and lack of experience, a fee rate of $180 per hour, typical for associates, was appropriate, rather than his claimed $425 fee); see also Sadowski, 2020 WL 360815, at *5 (finding that a fee rate of $190 per hour was appropriate). Plaintiff's Motion was filed after the publication of the Mantel opinion, giving Liebowitz notice that he must adjust his rate.

Ordinarily, an overstated request for an attorney rate would not be enough to warrant sanctions. However, considering that Liebowitz has in prior cases repeatedly made similar misrepresentations and been corrected and warned to cease doing so, the Court concludes that this conduct was committed in bad faith in order to recover what Leibowitz knew to be an unjustifiably high attorney rate.

### 3. *Inflated Values for Adlife's Copyright*

Liebowitz has also asserted an unreasonable value for Adlife's copyright. Liebowitz cites to several cases that award $30,000 in statutory damages in default judgments. Liebowitz Decl. ¶ 16. However, as the court noted in <u>Sadowski</u>, "those cases all involve complex and substantial copyrighted works" and "a more substantial infringement than only a single photograph." <u>Sadowski</u>, 2020 WL 360815, at *2–3; <u>see also</u> <u>Tokar v. 8 Whispering Fields Assoc., Ltd.</u>, No. 08-CV-4573, 2011 WL 7445062, at *1,2 (E.D.N.Y. Dec. 13, 2011), <u>report and recommendation adopted by</u> No. 08-CV-4573, 2012 WL 688468 (E.D.N.Y. Mar. 2, 2012) (infringement of detailed architectural plans); <u>Microsoft Corp. v. Comput. Care Ctr., Inc.</u>, No. 06-CV-1429, 2008 WL 4179653, at *11 (E.D.N.Y. Sept. 10, 2008) (infringement of computer software); <u>Peer Int'l. Corp. v Max Music & Entertainment, Inc.</u>, No. 03-CV-996, 2004 WL 1542253, at *4 (S.D.N.Y. July 9, 2004) (infringement of thirty musical compositions); <u>Getaped.Com, Inc. v. Cangemi</u>, 188 F. Supp. 2d 398, 400 (S.D.N.Y. 2002) (infringement of website source code).

Liebowitz also cites to eleven of his own cases in which $30,000 in statutory damages were provided for the infringement of a single photograph. Liebowitz Decl. ¶ 23. But as another court has noted in reviewing a similar filing from Liebowitz in the default judgment context, he has not provided a factual record sufficient to support the amount of statutory damages he seeks. <u>See</u> <u>Seelie v. Original Media Grp. LLC</u>, No. 19-CV-5643, 2020 WL 136659, at *2 (E.D.N.Y. Jan. 13, 2020); <u>see also</u> <u>Bryant v. Media Right Prods.</u>, 603 F.3d 135, 143-44 (2d Cir. 2010) (listing as relevant factors in assessing statutory damages "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties."). Although the courts in the cases he cites do not provide any reasoning

15

in their "so ordered" judgments (which reduces the persuasive force of those opinions), these

cases appear to be distinguishable in a variety of ways. For instance, among other potentially

relevant differences, every infringement was of a unique and relatively sophisticated photograph

prominently featured on the infringer's website.[5] Additionally, several of these cases involved a

secondary cause of action for the willful removal of identifying copyright information. See, e.g.,

Chevrestt, Dkt. No. 1, at ¶ 1 (removal and/or alteration of copyright management information

under section 1202(b) of the Digital Copyright Act); Hirsch, Dkt. No. 1, at ¶ 1 (same); Myeress,

Dkt. No. 1, at ¶ 1 (same); J.C. Rice, Dkt. No. 1, at ¶ 1 (same); Martinka, Dkt. No. 1, at ¶ 1

(same). The infringements at issue in these eleven cases are, thus, significantly different than the

mere reproduction of a stock photo of pork in a grocery ad alongside numerous other images. A

mere string citation to these cases, absent any evidence in support of a specific amount of

statutory damages under the applicable factors, such as licensing fees or prior cease-and-desist

letters, is insufficient to justify awarding $30,000.

Once again, Liebowitz is clearly aware of the law in this area, as he has recently been

denied a request for $30,000 in statutory fees for the infringement of a single photograph. See

Stridiron, 2019 WL 2569863, at *3 (noting a lack of support for maximum statutory damages,

and stating that "courts have found the statutory minimum of $750 to be a more appropriate

award" for the infringement of a single photograph when a plaintiff does not provide any

---

[5] See Wolman, Dkt. No. 1 (S.D.N.Y. Dec. 11, 2018); Hirsch, Dkt. No. 1 (S.D.N.Y. Oct. 4, 2018); Martinka v. Diario De Mexico USA, Inc., No. 18-CV-1993, Dkt. No. 1 (S.D.N.Y. Mar. 6, 2018); Myeress, Dkt. No. 1 (S.D.N.Y. Dec. 9, 2017); J.C. Rice v. Sutton New Media LLC, No. 17-CV-8332, Dkt. No. 1 (S.D.N.Y. Oct. 29, 2017); Myers v. COED Media Group, LLC, No. 18-CV-2180, Dkt. No. 1 (S.D.N.Y Mar. 12, 2018); Zlozower (S.D.N.Y. Dec. 5, 2017); Chevrestt v. Craft Nation, Inc., No. 17-CV-9232, Dkt. No. 1 (S.D.N.Y. Nov. 23, 2017); Lee v. White Cat Media, No. 17-CV-8122, Dkt. No. 1 (S.D.N.Y. Oct. 22, 2017); Marzullo v. Karmic Release Ltd., No. 17-CV-7482, Dkt. No. 1 (S.D.N.Y. Sept. 29, 2017); Miller v. AllHipHop.com LLC, No. 16-CV-2744, Dkt. No. 1 (S.D.N.Y. Apr. 12, 2016).

evidence supporting a higher amount); cf. Baker, 431 F. Supp. 2d at 363 (imposing sanctions under the court's inherent authority for an improper and unreasonable claim of actual damages, finding it significant that the attorney was "clearly aware of the law").

Liebowitz has submitted other recent filings that seem to consciously disregard the Court's correction from Stridiron. Earlier this year, Liebowitz was once again corrected for "consistently and undeniably assert[ing] inflated values" for a plaintiff's copyright that were "wholly unsupported by the evidentiary record." Otto v. Hearst Commc'ns, Inc., No. 17-CV-4712, 2020 WL 377479, at *3–4 (S.D.N.Y. Jan. 23, 2020). Liebowitz and his client in that case claimed that a reasonable license fee for a photograph of President Trump was $4,000. Id. at *2. However, the court estimated a reasonable license fee of $100.00 and awarded his client the minimum statutory recovery of $750. Id.; see also Dermansky v. Tel. Media, LLC, No. 19-CV-1149, 2020 WL 1233943, at *4, 5 (E.D.N.Y. Mar. 13, 2020) (where Liebowitz requested $30,000 in statutory damages for the infringement of an animal photograph and was awarded $1,000, the court noted, *inter alia*, the fact that there was only one act of infringement, and that he presented no evidence of actual harm or the defendant's willfulness).

Not only does Liebowitz fail to provide any evidence that might support a $30,000 award for the infringement of single stock photograph of pork, and not only does he cite to disanalogous cases in attempt to justify this amount, but he further makes misleading statements in characterizing that inapplicable case law. When citing to this case law, Liebowitz states, "in the last three years, Courts in this District have routinely awarded $30,000 in statutory damages for a single photograph without holding an inquest and without proof of damages." Pl.'s Mem. ¶ 7. This assertion suggests that the following case law was filed in the Northern District of New York. However, every case thereafter was filed in the Southern District of New York. Id.

17

Although this misstatement conceivably could result from hurried filing,[6] Liebowitz's citations also omit the location of the filing. Id. This omission leads the Court to infer that Liebowitz had the intention of misleading the Court. See Forman, 128 F.R.D. at 600.

Given Mr. Liebowitz's history of similar arguments in other cases and of corrections by courts in those cases, these errors appear to be a strategic choice rather than an honest oversight. Therefore, the Court concludes that Liebowitz acted in bad faith by presenting frivolous arguments and misleading the court with respect to statutory damages.

### 4. Liebowitz's History of Misconduct

As previously stated, in determining whether there has been a finding of bad faith, a court may take judicial notice of other courts' rulings and the counsel's past misconduct. See, e.g., Gollomp, 568 F.3d at 374 (sanctioning a plaintiff's counsel after counsel "ha[d] been repeatedly warned about the perils of frivolous and vexatious litigation"); Rice, 2019 WL 3000808, at *3–4 (imposing sanctions against Liebowitz pursuant to the court's inherent authority because Liebowitz's "failure to comply is not isolated but rather part of a pattern of non-compliance") (internal quotation marks and alterations omitted).

In the Southern District of New York, Judge Abrams noted his concern with "Liebowitz's repeated failures to follow the orders and rules of this Court and others within the district, as well as his propensity to take unreasonable positions and to omit crucial facts—or even to make outright misrepresentations—in an apparent attempt to increase costs and to extort unwarranted settlements." Pereira v. 3072541 Can. Inc., No. 17-CV-6945, 2018 WL 5999636, at *3 (S.D.N.Y. Nov. 15, 2018) (collecting cases); see also Terry, 2018 WL 3104091 at *2

---

[6] Cf. Rankin, 293 F.R.D. at 393 (An "[attorney's] heavy caseload should not mitigate the sanctions to be imposed.").

(admonishing Liebowitz for repeating arguments that have "no basis in law"); Reynolds v.

Hearst Commc'ns, Inc., No. 17-CV-6720, 2018 WL 1229840, at *4 (S.D.N.Y. Mar. 5, 2018)

(where Liebowitz "inevitably increase[d] the cost of litigation" by failing to disclose certain

facts), reconsideration denied, No. 17-CV-6720, 2018 WL 1602867 (S.D.N.Y. Mar. 29, 2018);

Rudkowski v. MIC Network, Inc., No. 17-CV-3647, 2018 WL 1801307, at *3, 3 n.3 (S.D.N.Y.

Mar. 23, 2018), ("caution[ing]" Liebowitz for making misrepresentations to the court), appeal

withdrawn, No. 18-CV-2686, 2018 WL 6536114 (2d Cir. Nov. 2, 2018); Steeger v. JMS

Cleaning Servs., LLC, No. 17-CV-8013, 2018 WL 1363497, at *3 (S.D.N.Y. March 15, 2018)

(noting that Liebowitz's submissions to the Court evinced a "pattern of omissions and

misrepresentations").[7] Liebowitz "has earned the dubious distinction of being a regular target of

sanctions-related motions and orders. Indeed, it is no exaggeration to say that there is a growing

body of law . . . devoted to the question of whether and when to impose sanctions on Mr.

Liebowitz alone." Rice, 2019 WL 3000808, at *1.[8]

---

[7] Liebowitz has also demonstrated a general lack of credibility through a variety of types of misconduct beyond what he exhibits in this case. Late last year, for instance, Liebowitz was held in contempt of court for failure to provide a court ordered document. Berger v. Imagina Consulting, Inc., No. 18-CV-8956, 2019 WL 6695047, at *4 (S.D.N.Y. Nov. 1, 2019). On April 12, 2019, Liebowitz failed to appear at a discovery conference and did not call or provide an explanation for his absence. Id. at *1. Liebowitz claimed that he had missed the conference due to a death in the family that took him out of country, however, Defendant's counsel claimed that Liebowitz was actually at a trade show in Europe. Id. Judge Seibel requested documentation [a death certificate] proving who died, when they died, and how Liebowitz was notified. Id. Instead of complying with these orders, Liebowitz filed several declarations asserting that his grandfather had died. Id. at 2–3. Judge Seibel "question[ed] [Liebowitz's] fitness to practice," not just because of his initial "dishonesty" about the date of his grandfather's death, but because of his subsequent "'failure to own up to the dishonesty and the doubling and quintupling and octupling down on the dishonesty.'" Usherson, 2020 WL 3483661, at *3 (quoting Berger Tr. 14).

[8] See, e.g., Craig v. UMG Recordings, Inc., No. 16-CV-5439, 2019 WL 1432929, at *10 (S.D.N.Y. Mar. 29, 2019) (imposing personal sanctions on Liebowitz and his firm for filing meritless disqualification motion in bad faith and requiring court to hold wasteful and unnecessary evidentiary hearing); Polaris Images Corp. v. CBS Interactive, Inc., No. 19-CV-

"In exchange for '[t]he license granted by the court,' members of the bar must 'conduct themselves in a manner compatible with the role of courts in the administration of justice.'" Usherson, 2020 WL 3483661, at *22 (quoting In re Snyder, 472 U.S. 634, 645 (1985)). Over the last three years, Liebowitz and his firm have continuously failed to "conduct themselves in a manner compatible with the role of courts in the administration of justice." Id. In the past, Liebowitz has attributed his apparent misconduct to "administrative oversights," claiming that "things fall through the cracks," and "no one is perfect." Mondragon, 2020 WL 2395641, at *10, 14.

However, Liebowitz has, through a pattern of misconduct, displayed a "deliberate indifference to an attorney's obligation to behave in a professional, responsible, and competent manner." Wisser v. Vox Media, Inc., No. 19-CV-1445, 2020 WL 1547381, at *7 (S.D.N.Y. Apr. 1, 2020) (quoting Sands v. Bauer Media Grp. USA, LLC, No. 17-CV-9215, 2019 WL 4464672, at *6 (S.D.N.Y. Sept. 18, 2019)); see also Polaris, 2019 WL 5067167, at *3 ("[G]iven the frequency with which Liebowitz commits 'administrative errors,' the undersigned is unconvinced that they are indeed good faith oversights."). It is evident both that in Liebowitz's hurried attempt to file as many suits as possible, he fails to conduct the due diligence required to litigate in a competent manner, and that Liebowitz has a habit of making allegations and legal arguments that he knows to be erroneous.

---

3670, 2019 WL 5067167, at *2–3 (S.D.N.Y. Oct. 9, 2019) (imposing $1,500 fine after Liebowitz's failure to comply with two explicit and simple directions contained in a court order); Steeger, 2018 WL 1363497, at *3 (imposing sanction of $2,000 on Liebowitz personally and requiring him to attend four CLE credit hours in ethics and professionalism); Romanowicz v. Alister & Paine, Inc., No. 17-CV-8937, Dkt. No. 24 (S.D.N.Y. June 22, 2018) (ordering Liebowitz to pay $200 to the Clerk of Court for failure to comply with an order directing him to file an affidavit of service); Ferdman v. CBS Interactive, Inc., 342 F.Supp.3d 515 (S.D.N.Y. 2018) (imposing sanction for a discovery violation, resulting in denial of the plaintiff's motion for summary judgment on issue of infringement).

### 5.  *Sanctions Under the Court's Inherent Authority*

After reviewing Liebowitz's long history of misconduct and failure to improve his

practice, is may be true that there is "no sanction short of disbarment that would stop Mr.

Liebowitz from further misconduct." Usherson, 2020 WL 3483661, at *19; see also Mondragon,

2020 WL 2395641, at *13 ("I have zero confidence that, absent association with experienced

Colorado co-counsel in this case, Liebowitz will follow this Court's rules, procedures, and

orders, and be able to conduct himself in a manner compatible with the role of courts in the

administration of justice.") (internal quotation marks omitted).

"There is a strong public interest in shining a bright light on Mr. Liebowitz's

extraordinary record of misconduct and in ensuring that both courts and his clients, current and

future, are aware of that history so that they can be vigilant in scrutinizing Mr. Liebowitz's

conduct." Usherson v. Bandshell Artist Mgt., No. 19-CV-6368, 2020 WL 4228754, at *5

(S.D.N.Y. July 22, 2020).[9] Liebowitz has continued to mass-file cases despite the errors and

misrepresentations that result. His firm has continued to make meritless and misleading

arguments after being repeatedly warned against doing so.

More specifically, he has continued to request attorney's fees and statutory damages at

rates that he has been directly advised are unreasonable and legally baseless. He is not only

deceiving the court with this practice but further is at times unjustly recovering expenses from

---

[9]  On July 22, the Usherson court denied Liebowitz's motion to stay a nationwide
sanction on him and his firm that was issued on June 26, 2020 in the Southern District of New
York. Id. at *6. This sanction requires that Liebowitz pay $103,517.49 to the Clerk of Court, and
that he issue a copy of the opinion summarizing his misconduct to all of LLF's current clients
and file a copy on the docket of any pending case he or his firm filed. Usherson, 2020 WL
3483661, at *22. The sanction further requires Liebowitz to file a copy of the order in any action
that is filed within one year of the opinion and attach a copy of prior copyright registration from
the U.S. Copyright Office. Id.

infringing defendants in excess of what is reasonable to deter further infringement. Moreover, the similarly between his conduct in this case and past conduct for which he has been admonished supports an inference of bad faith. In the interest of deterrence, and in the interest of ensuring public knowledge of Liebowitz's misconduct, the Court finds that a sanction of $1,000 is warranted in this case.[10],[11]

---

[10]  The Court notes Adlife's continued use of an attorney who has little respect or knowledge of local procedures, violates court orders, lies under oath, and is continuously sanctioned for frivolous lawsuits. Adlife is known for being litigious and has been represented by LLF in at least 41 proceedings since 2018. See MyWebGrocer, Inc. v Adlife Mktg. & Communications Co., Inc., 383 F. Supp. 3d 307, 309, 314 (D. Vt. 2019) (where Adlife was accused of "copyright trolling" and seeking to "recover money from persons who may actually owe it little or nothing."). Several of Adlife's cases were voluntarily dismissed shortly after a court request for registration verification, text/minute order for failure to comply with local laws, or a show cause order for a lack of proper service. See, e.g., Adlife Mktg. & Communications Co., Inc. v. Yoder's Meats, Inc., No. 20-CV-1313, Dkt. No. 5 (E.D. Pa. June 9, 2020) (where Liebowitz failed to serve a summons); Adlife Mktg. & Communications Co., Inc. v. Acme Markets, Inc., No. 19-CV-7394, Dkt. No. 3 (S.D.N.Y. Aug. 9, 2019) (where the Court filed a notice to submit an AO 121 Copyright Form); Adlife Mktg. & Communications Co., Inc. v. Wal-Mart.com USA, LLC, No. 19-CV-3175, Dkt. No. 19 (D. Col. Mar. 6, 2019) (where Liebowitz's notice of settlement continuously failed to comply with local laws); Adlife Mktg. & Communications Co., Inc. v. Tops Markets, LLC, No. 18-CV-1102, Dkt. No. 5 (N.D.N.Y. Nov. 11, 2018) (where case was voluntarily dismissed after a list of copyright numbers was mailed to the Register of Copyrights). This is of no surprise, as LLF is known to voluntarily dismiss suits that are subject to dismissal when it is clear they are in "hot water." Stridiron, 2019 WL 2569863, at *4; see also, McDermott v. Monday Monday, LLC, No. 17-CV-9230, 2018 WL 5312903, at *2 (S.D.N.Y. Oct. 26, 2018) ("In the over 700 cases Liebowitz has filed since 2016, over 500 of those have been voluntarily dismissed, settled, or otherwise disposed of before any merits-based litigation. In most cases, the cases are closed within three months of the complaint filing.").

[11]  See Hart v. Blanchette, No. 13-CV-6458CJS, 2019 WL 1416632, at *29 (W.D.N.Y. Mar. 29, 2019) (quoting Xu v. UMI Sushi, Inc., 2016 WL 3523736, *4 (S.D.N.Y. 2016) ("[S]anctions pursuant to the Court's inherent sanctions power may 'include a fine payable to the Clerk of the Court[.]'"). These sanctions are imposed "in order to acknowledge '[d]ue regard for the need to vindicate the public interest in the sound administration of justice[.]'" Hart, 2019 WL 1416632, at *29 (quoting Miltope Corp. v. Hartford Cas. Ins. Co., 163 F.R.D. 191, 195 (S.D.N.Y. 1995); see also, Cognex Corp. v. Microscan Sys., Inc., 990 F. Supp. 2d 408, 421 (S.D.N.Y. 2013) (imposing a fine payable to Clerk of the Court "to provide an adequate deterrent to [similar] conduct in the future").

"Because Liebowitz's 'actions were indistinguishable from those of [the Liebowitz Law Firm PLLC] as a firm,' the Court [imposes sanctions] against both Liebowitz and the Liebowitz Firm PLLC, jointly and severally." Craig v. UMG Recordings, Inc., 380 F. Supp. 3d 324, 339 (S.D.N.Y. 2019) (citation omitted) (quoting Enmon, 675 F.3d at 148); accord Rock, 2020 WL 468904, at *4. Therefore, the court will impose a $1,000 sanction against both Liebowitz and LLF, jointly and severally.

### 6. Removal from the Roll of the Court

As a separate matter, pursuant to N.D.N.Y. Local Rule 83.1(h), the Court recommends the removal of Liebowitz from the roll of the court for failure to notify the Court of his recent disbarment in the Northern District of California. N.D.N.Y. Local Rule 83.1(h) states, "[a]n attorney admitted pursuant to this section who is disciplined in any other jurisdiction shall advise this Court of such discipline within 15 days thereof. Failure to do so will result in removal from the roll of the Court." L.R. 83.1(h). "On October 7, 2019, an order of disbarment was entered against Mr. Liebowitz by the North District of California after it came to that court's attention that Mr. Liebowitz had been filing numerous cases in the Northern District without being a member of the State of California bar and without seeking *pro hac vice* admission, as was required under the Northern District of California's rules." Mondragon, 2020 WL 2395641, at *5 (citing In the Matter of Richard P. Liebowitz, No. 19-MC-80228 (N.D. Cal. October 7, 2019)). Ten days later, the judge in In the Matter of Richard P. Liebowitz entered a supplemental order due to Liebowitz's failure to notify all judges in the Northern District of California of his disbarment. Id. (citing In the Matter of Richard P. Liebowitz, No. 19-MC-80228 (N.D. Cal. October 17, 2019)).

Liebowitz then filed a motion to "Correct or Otherwise Vacate the Court's [October 7, 2019] Order." In the Matter of Richard P. Liebowitz, Dkt. No. 5 (October 21, 2019). In this motion, Liebowitz argued that he could not be disbarred in the Northern District because he was never admitted in the first place. See generally id. Liebowitz made this contention after having filed a number of cases in California as if he were a member in good standing, see Dkt. No. 17 at 1, and after previously stating in his motion to show cause, "My membership with the bar of the United States District Court for the Northern District of California should not be terminated," see Dkt. No. 2 ¶ 1. In an order issued on June 12, 2020, the court corrected its prior technically incorrect use of the term "disbarment," but barred Liebowitz from ever practicing in the district, even on a *pro hac vice* basis, and ordered Liebowitz to submit a copy of that order in every open case in the Northern District of California in which Liebowitz had been admitted *pro hac vice* and to attach a copy of the order to any future *pro hac vice* application. See generally In the Matter of Richard P. Liebowitz, Dkt. No. 17 (June 12, 2020).

On June 3, 2020, after receiving notice of Liebowitz's disbarment in the Northern District of California, an Advisory Notice was issued by the Clerk of Court in the District of Colorado informing Liebowitz that he was no longer in good standing in that district. Under D. COLO. Atty. R. 3(c), "[a]n attorney who is not in good standing shall not practice before the bar of this court of continue to be an attorney of record in any pending case." See Adlife Mktg. & Communications Co., Inc. v. Kroger Co, No. 20-CV-137, Dkt. No. 27 (D. Colo. June 16, 2020).

Considering this recent action in the District of Colorado, the disbarment order in Northern District of California appears to constitute substantial discipline as it affected Liebowitz's good standing to practice in the District of Colorado. Nevertheless, this District received no record from Liebowitz of his disbarment in the Northern District of California, nor,

for that matter, of the discipline imposed in the June 12, 2020 order. Accordingly, the Court

recommends to the Chief Judge of this District that Liebowitz be removed from the roll of the

Court for failure to comply with L.R. 83.1(h).

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED without prejudice**;

and it is further

**ORDERED**, that within seven days of the date of this Memorandum-Decision and Order,

Liebowitz and his firm shall pay to the Clerk of Court sanctions totaling $1,000; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:        August 18, 2020
              Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge